**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 11a0345n.06

No. 09-2443

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**

*May 20, 2011*

LEONARD GREEN, Clerk

COVENANT MEDICAL CENTER, )
INCORPORATED, )
                          )
      Plaintiff-Appellant, )
                          )
v. )    ON APPEAL FROM THE UNITED
                          )    STATES DISTRICT COURT FOR THE
KATHLEEN SEBELIUS, Secretary of Health )    EASTERN DISTRICT OF MICHIGAN
and Human Services, )
                          )
      Defendant-Appellee. )

Before: SUTTON and STRANCH, Circuit Judges; WELLS, District Judge.[*]

SUTTON, Circuit Judge. This case presents an issue of first and likely last impression: whether the Secretary of Health and Human Services exceeded her authority in adopting a since-abandoned "written agreement requirement" for certain Medicare reimbursements, *see* 42 C.F.R. §§ 413.86(f)(3), (f)(4)(ii) (1998). Concluding that the regulation is valid and that Covenant Medical Center is not otherwise entitled to the reimbursements in dispute, we affirm.

I.

Under the Medicare program, the Secretary reimburses inpatient hospitals for costs associated with "graduate medical education." 42 U.S.C. § 1395ww(h); *see also id.* § 1395ww(d)(5)(B). The

---

[*]The Honorable Lesley Wells, Senior District Court Judge for the Northern District of Ohio, sitting by designation.

Secretary pays hospitals based on the number of "full time equivalent" (FTE) residents in the hospital's residency program. *Id.* § 1395ww(h)(2). A hospital's FTE count comprises more than just the time residents spend in a hospital. In the years relevant here, Congress directed the Secretary to include "all the time" residents spend in patient care activities "under an approved medical residency training program," so long as "the hospital incur[red] all, or substantially all, of the costs for the training program," "without regard to the setting in which the activities [were] performed." 42 U.S.C. § 1395ww(h)(4)(E); *see id.* § 1395ww(d)(5)(B)(iv).

Tasked with "establish[ing] rules . . . for the computation of . . . full-time-equivalent residents," *id.* § 1395ww(h)(4)(A), the Secretary determined that

> the time residents spend in nonprovider settings such as freestanding clinics, nursing homes, and physicians' offices in connection with approved programs is not excluded in determining the number of FTE residents in the calculation of a hospital's resident count if the following conditions are met—
>
> (i) The resident spends his or her time in patient care activities.
>
> (ii) There is a written agreement between the hospital and the outside entity that states that the resident's compensation for training time spent outside of the hospital setting is to be paid by the hospital.

42 C.F.R. § 413.86(f)(3) (1998). As of 1999, the written agreement had to "indicate that the hospital [would] incur the cost of the resident's salary and fringe benefits . . . and [that] the hospital [was] providing reasonable compensation to the nonhospital site for supervisory teaching activities." *Id.* § 413.86(f)(4)(ii).

Covenant Medical Center runs an inpatient hospital in Saginaw, Michigan. In 1968, Covenant and another Saginaw hospital, St. Mary's, launched a joint venture now known as the

Synergy Medical Education Alliance. Synergy runs a residency program in which residents provide patient care at the Synergy Clinic as well as at Covenant and St. Mary's. Covenant and St. Mary's split Synergy's gross operating costs each year based on the overall percentage of time that Synergy residents spend at each hospital.

For Fiscal Years 1999, 2000 and 2001, Covenant applied for Medicare reimbursements through a private fiscal intermediary, *see* 42 U.S.C. §§ 1395h(a), 1395kk-1, including the percentage of Synergy residents' time spent at Covenant as part of its FTE count. The fiscal intermediary excluded the time, and Covenant appealed to the Provider Reimbursement Review Board. *See id.* § 1395oo.

A divided Board ruled for Covenant. The majority relied on 42 C.F.R. § 413.17(a), which says that "costs applicable to services, facilities, and supplies furnished to the provider by organizations related to the provider by common ownership or control are includable in the allowable cost of the provider at the cost to the related organization." Covenant and Synergy were, "for all intents and purposes, considered part of the same overall organization," the Board reasoned, and Covenant could thus include the Synergy residents' time toward its FTE count. The Board separately held that Covenant's documentation of its "normal business practices and agreements" satisfied the written agreement requirement.

The Administrator of the Centers for Medicare and Medicaid Services reversed. *See* 42 C.F.R. § 405.1875. "[T]here must be a written agreement," the Administrator held, "even if the

hospital and nonhospital setting are related," and Covenant and Synergy did not satisfy the requirement. AR.15. The Administrator also determined that Covenant had not shown that it incurred "all or substantially all" of the costs for Synergy's residency program, as the regulations require, because it split costs with St. Mary's on a 75/25 basis.

Covenant challenged the Secretary's decision in district court. *See* 42 U.S.C. § 1395oo(f). Both parties moved for summary judgment, and the district court ruled for the Secretary.

## II.

This appeal raises three related questions: Does the written agreement requirement apply to related parties under 42 C.F.R. § 413.17? If so, did Covenant comply with the requirement? If the written agreement requirement applies to Covenant and if Covenant failed to comply with it, is the requirement a valid exercise of the Secretary's administrative authority?

*Applicability to Related Parties*. Covenant argues that it may include the Synergy residents' time in its reimbursement request because the written agreement requirement does not apply to related parties under 42 C.F.R. § 413.17. As Covenant sees it, § 413.17's general rule, allowing hospitals to claim reimbursement for "costs applicable to services, facilities, and supplies furnished" by a related party, overrides the requirements of §§ 413.86(f)(3) and (f)(4)(ii) for residency costs.

The first problem with this argument is that federal courts "do not write on a blank slate" when interpreting agency regulations. *Rosen v. Goetz*, 410 F.3d 919, 927 (6th Cir. 2005). We give

the Secretary's interpretation "substantial deference," *Claiborne-Hughes Health Ctr. v. Sebelius*, 609 F.3d 839, 844 (6th Cir. 2010), so long as it is not "plainly erroneous or inconsistent with the regulation," *Bowles v. Seminole Rock & Sand Co.*, 325 U.S. 410, 414 (1945).

On at least two occasions, the Secretary has said that related parties must have written agreements under §§ 413.86(f)(3) and (f)(4)(ii). When the Secretary promulgated the written agreement requirement in 1998, a response to one stakeholder's comment made clear that the final rule "requir[ed] a written agreement between hospitals and nonhospital sites for purposes of this final rule, even where the hospital and nonhospital site are related organizations under § 413.17." Medicare Program; Changes to the Hospital Inpatient Prospective Payment Systems and Fiscal Year 1999 Rates, 63 Fed. Reg. 40,954, 40,996 (July 31, 1998). And in this case, exercising the Secretary's authority to review Board decisions, *see* 42 U.S.C. § 1395oo(f)(1); 42 C.F.R. § 405.1875, the Administrator concluded that "there must be a written agreement, even if the hospital and the nonhospital setting are related. . . . The specific regulation controlling the counting of FTEs in the nonhospital setting does not provide for an exception, pursuant to the related party regulation, to the written agreement requirement." AR.15.

The Secretary's position is not inconsistent with the regulation, and indeed respects the interpretive principle that "a specific provision . . . controls ones of more general application." *Bloate v. United States*, __ U.S. __, 130 S. Ct. 1345, 1354 (2010). In this instance, the written agreement requirement covers only FTE calculations while the related party regulation covers all "services, facilities, and supplies," 42 C.F.R. § 413.17(a), permitting the Secretary to invoke the

specific regulation (the written agreement requirement) over the general one (the related party regulation).

Covenant objects that the Secretary's rulings—the 1998 response and the Administrator's decision here—did not go through the notice-and-comment rulemaking process. *Chevron* deference to administrative interpretations of statutes, it is true, turns on whether the interpretation comes in a form with "the force of law." *United States v. Mead Corp.*, 533 U.S. 218, 226–27 (2001); *Christensen v. Harris Cnty.*, 529 U.S. 576, 587 (2000). But this limit does not apply to administrative interpretations of regulations. Just this Term, the Supreme Court deferred to an administrative interpretation found in an *amicus* brief, as it had in *Auer v. Robbins*, 519 U.S. 452 (1997), asking only whether the agency's position was "consistent with the regulatory text." *Chase Bank USA, N.A. v. McCoy*, __ U.S. __, 131 S. Ct. 871, 880 (2011). The same inquiry leads to the same conclusion here.

*Compliance with the Written Agreement Requirement.* Even if the written agreement requirement applies to related entities, Covenant insists that it complied with it. For the fiscal years at issue, the Secretary required Covenant to produce a written agreement with Synergy indicating that Covenant would "incur the cost of the resident's salary and fringe benefits" and "provid[e] reasonable compensation to [Synergy] for supervisory teaching activities." 42 C.F.R. § 413.86(f)(4)(ii). In trying to make this showing before the agency, Covenant took a buckshot approach, producing a slew of documents and arguing that any one of them could satisfy the written agreement. Not one of the documents hit the mark, the Administrator held, and substantial evidence

supports that conclusion. 5 U.S.C. § 706(2)(E); *see Med. Rehab. Servs., P.C. v. Shalala*, 17 F.3d

828, 831 (6th Cir. 1994).

The one document in the administrative record that amounts to a written agreement between

Covenant and Synergy contains several provisions suggesting that Covenant would *not* incur the

costs of Synergy's residency program:

> \* Synergy "assume[s] full responsibility for the education of the . . . residents."
> AR.328
>
> \* Synergy residents "are at all times acting and performing as independent
> contractors under the direction, supervision and control of the instructors of
> [Synergy]. No student/resident or principal, employee, or agent of [Synergy] shall
> be considered an employee of [Covenant]." AR.331.
>
> \* Synergy is "solely liable for any and all liability arising out of the acts or
> omissions of its agents or employees. . . . Further, [Synergy] shall indemnify and save
> [Covenant] harmless from any and all claims made or causes of action asserted by a
> student resident because of or in any way related to the student resident's
> involvement in the medical education program . . . ." AR.331–32.

Instead of indicating that Covenant agreed to bear the costs of Synergy's residency program, *see* 42

C.F.R. § 413.86(f)(4)(ii), the record shows that Covenant incurred those costs only indirectly,

through its "member hospital contributions" to Synergy's overall operating budget, AR.563. From

an organizational standpoint, that may have been the most practical way to structure the relationship,

with Synergy bearing direct responsibility for the residency program and Covenant and St. Mary's

making lump sum payments to cover these and other costs. But however sensible as a matter of

business operation, this approach does not satisfy § 413.86(f)(4)(ii).

- 7 -

*Validity of the Written Agreement Requirement.*  If all else fails, Covenant urges us to conclude that the written agreement requirement exceeds the Secretary's authority.  Under the relevant statute, Covenant points out, Congress directed the Secretary to count "*all* the time" a resident spends in patient care toward a hospital's FTE count "if the hospital incurs all, or substantially all, of the costs for the training program."  42 U.S.C. § 1395ww(h)(4)(E) (emphasis added).  The statute thus imposes just two requirements—that residents must engage in patient care and that the hospital must incur all or substantially all of the costs—and beyond that, Covenant urges, the Secretary may not impose any additional preconditions to reimbursement, including a written agreement requirement.

But the Secretary could permissibly conclude that a written agreement is not a new substantive requirement but a procedural mechanism for satisfying the two statutory requirements.  Congress gave the Secretary authority to "establish rules consistent with [§ 1395ww(h)(4)] for the computation of the number of full-time-equivalent residents in an approved medical residency training program," *id.* § 1395ww(h)(4)(A), and the written agreement requirement comfortably fits within that grant of authority under *Chevron*.  "Regulation, like legislation, often requires drawing lines." *Mayo Found. for Med. Educ. & Research v. United States*, __ U.S. __, 131 S. Ct. 704, 715 (2011).  The Secretary reasonably determined that the written agreement requirement "would improve administrability, and thereby . . . avoid[] the wasteful litigation and continuing uncertainty that would inevitably accompany a purely case-by-case approach," *id.* (citations and quotation marks

omitted), for determining whether a hospital "incurs all, or substantially all, of the costs for [a particular] training program," 42 U.S.C. § 1395ww(h)(4)(E).

*Chevron* supports this conclusion. At step one of *Chevron*, we ask whether Congress spoke directly to the issue at hand. *Sierra Club v. EPA*, 557 F.3d 401, 405 (6th Cir. 2009). In this instance it did not, as Congress said nothing in §§ 1395ww(h)(4)(A) or (h)(4)(E) about the documentation the Secretary may require. Elsewhere, moreover, Congress endorsed the Secretary's authority to insist on documentation before reimbursement, providing that "no . . . payments shall be made to any provider unless it has furnished such information as the Secretary may request in order to determine the amounts due such provider . . . for the period with respect to which the amounts are being paid or any prior period." 42 U.S.C. § 1395g(a).

That § 1395ww(h)(4)(E) requires the Secretary to reimburse "all the time" spent in patient care, contrary to Covenant's position, does not prohibit the Secretary from imposing documentation requirements for establishing what time was spent in patient care and for proving that the other conditions for reimbursement were met. Otherwise, the Secretary would be severely handicapped in administering the program. Under Covenant's reading, she could not require hospitals to submit reimbursement requests *before* receiving payment because, if she did, she would not end up including "all the time" spent in patient care, only the requested time. Likewise, under Covenant's reading, she could not require hospitals to submit their documentation electronically, make them meet deadlines or impose any other requirement that might lead to crediting less than "all the time."

Section 1395ww(h)(4)(E) says nothing about these sorts of procedural requirements, and accordingly the statute does not preclude the Secretary from imposing them.

At step two of *Chevron*, we ask whether the Secretary's interpretation—establishing a written agreement requirement—reasonably construes the statute. *Sierra Club*, 557 F.3d at 405. The Secretary may specify the documentation hospitals must submit, 42 U.S.C. § 1395g(a), and the written agreement does just that, "provid[ing] an administrative tool for use by the fiscal intermediaries to assist in determining whether hospitals would incur all or substantially all of the costs of the training in the nonhospital setting in accordance with Congressional intent." Medicare Program; Changes to the Hospital Inpatient Prospective Payment Systems & Fiscal Year 2005 Rates, 69 Fed. Reg. 48,916, 49,179 (Aug. 11, 2004). It was reasonable for the Secretary to conclude that § 1395g(a) permitted this measure and that § 1395ww(h)(4)(E) did not prohibit it.

Through it all, Covenant may well have intended to comply with the Secretary's FTE regulations and simply did not know about the written agreement requirement until after the fact. But that does not save it. "Just as everyone is charged with knowledge of the United States Statutes at Large, Congress has provided that the appearance of rules and regulations in the Federal Register gives legal notice of their contents." *Fed. Crop Ins. Corp. v. Merrill*, 332 U.S. 380, 384–85 (1947); *see also* 44 U.S.C. § 1507. "As a participant in the Medicare program, [Covenant] had a duty to familiarize itself with the legal requirements for cost reimbursement." *Heckler v. Cmty. Health Servs. of Crawford Cnty., Inc.*, 467 U.S. 51, 64 (1984). Because the written agreement requirement

No. 09-2443
*Covenant Med. Ctr., Inc. v. Sebelius*

legitimately applied to Covenant and because the Secretary permissibly concluded that Covenant did

not meet it, the Secretary's final decision must be upheld.

III.

For these reasons, we affirm.