# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

Argued October 27, 2016       Decided December 9, 2016

No. 13-5330

BORGESS MEDICAL CENTER, A MICHIGAN NONPROFIT
CORPORATION, AND BRONSON METHODIST HOSPITAL, A
MICHIGAN NONPROFIT CORPORATION,
APPELLANTS

v.

SYLVIA MATHEWS BURWELL, SECRETARY OF THE UNITED
STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES,
APPELLEE

Appeal from the United States District Court
for the District of Columbia
(No. 1:12-cv-00144)

*Geoffrey M. Raux* argued the cause for appellants. With
him on the briefs was *Lori A. Rubin*.

*Samantha L. Chaifetz*, Attorney, U.S. Department of
Justice, argued the cause for appellee. On the brief were
*Benjamin C. Mizer*, Principal Deputy Assistant Attorney
General, and *Michael S. Raab* and *Henry C. Whitaker*,
Attorneys.

Before: TATEL, BROWN and KAVANAUGH, *Circuit Judges*.

Opinion for the Court filed by BROWN, *Circuit Judge*.

BROWN, *Circuit* Judge: Appellants are two hospitals challenging the denial of reimbursements for the offsite training expenses of their medical residents for several cost reporting periods between 2000 and 2004 by the Secretary of the Department of Health and Human Services ("Secretary"). They argue the Secretary erroneously held they failed to comply with the Secretary's reimbursement regulations requiring that they incur all or substantially all of the costs of their offsite residency training programs and that they have a written agreement detailing the financing of their offsite programs. The district court granted summary judgment in favor of the Secretary on the grounds that appellants failed to comply with either of these requirements. Because we hold appellants failed to comply with the Secretary's "written agreement" requirement, we affirm.

**I**

**A**

Under the Medicare Act, Congress created a system to provide health insurance benefits to the elderly and disabled. 42 U.S.C. §§ 1395 *et seq.* This system is administered by the Centers for Medicare and Medicaid Services ("CMS") under the authority of the Secretary. *Id.* § 1395kk; 42 C.F.R. §§ 400.200 *et seq.*

Medicare is divided into several parts; the most relevant of those parts here is Part A, which relates to hospital insurance benefits. Under the Medicare statute, CMS is empowered to reimburse inpatient hospitals for costs associated with "graduate medical education." 42 U.S.C. § 1395ww(h). The amount reimbursed is determined based on the number of "full-time-equivalent" ("FTE") medical residents in the hospital's residency program each year. *Id.* § 1395ww(h)(2). For the time period relevant to this case, a hospital's FTE count is calculated based on the time residents spend providing patient care activities "under an approved medical residency training program . . . without regard to the setting in which the activities are performed." *Id.* § 1395ww(h)(4)(E)(i); *see id.* § 1395ww(d)(5)(B)(iv)(I). Thus, a hospital is eligible to count time its residents spend performing patient care activities in nonhospital settings towards its FTE count. *Id.* However, in order for this time to count towards a hospital's FTE, it must incur "all, or substantially all, of the costs for the training program in that setting." *Id.*

For the relevant years here—2000 through 2004—CMS enforced these requirements through regulations stating:

> [T]he time residents spend in nonprovider settings . . . may be included in determining the number of FTE residents in the calculation of a hospital's resident count if the following conditions are met—
>
> > (i) The resident spends his or her time in patient care activities.
> >
> > (ii) The written agreement between the hospital and the nonhospital site must

indicate that the hospital will incur the cost of the resident's salary and fringe benefits while the resident is training in the nonhospital site and the hospital is providing reasonable compensation to the nonhospital site for supervisory teaching activities. The agreement must indicate the compensation the hospital is providing to the nonhospital site for supervisory teaching activities.

(iii) The hospital must incur all or substantially all of the costs for the training program in the nonhospital setting . . . .

42 C.F.R. § 413.86(f)(4) (2000); *see also* 42 C.F.R. § 413.78(d) (2014). Thus, independent contractors evaluating a hospital's eligibility for, and level of, reimbursement had to assess (1) the residents' patient care activities, (2) the existence of a written agreement between the hospital and the nonhospital site, and (3) whether the hospital is responsible for "all or substantially all" of the costs of training. 42 C.F.R. § 413.86(f)(4) (2000). While not expressly required by the Medicare statute, CMS determined the "written agreement" requirement was necessary "in order to provide an administrative tool . . . to assist in determining whether hospitals would incur all or substantially all of the costs of the training in the nonhospital setting in accordance with Congressional intent." Medicare Program; Changes to the Hospital Inpatient Prospective Payment Systems and Fiscal Year 2005 Rates, 69 Fed. Reg. 48,916, 49,179 (Aug. 11, 2004). CMS defined the "all or substantially all" requirement to include "the residents' salaries and fringe benefits (including travel and lodging where applicable) and the

portion of the cost of teaching physicians' salaries and fringe benefits attributable to direct graduate medical education." 42 C.F.R. § 413.75(b)(1) (2014).

In order to expediently process reimbursement payments, a hospital must submit a cost report to its contractor each year in order to claim any Medicare reimbursements for residency programs in nonhospital settings. *See* 42 C.F.R. §§ 413.20(b), 413.24. The contractor then reviews these reports to determine the amount a hospital should be reimbursed under Medicare and issues a Notice of Program Reimbursement ("NPR") to inform the hospital of the contractor's determination. *Id.* § 405.1803. This determination is not necessarily final because the contractor has the option to reopen a final cost report for up to three years. *Id.* § 405.1885.

If a hospital disagrees with either the contractor's initial determination or the determination made upon the reopening of a prior decision, it can challenge the NPR before the Provider Reimbursement Review Board ("PRRB"). *See* 42 U.S.C. § 1395oo(a). The PRRB's decision is then subject to review by the CMS Administrator. *See id.* § 1395oo(f)(1); 42 C.F.R. § 405.1875(a). The CMS Administrator's decision constitutes final agency action subject to judicial review. *See* 42 U.S.C. § 1395oo(f)(1); 42 C.F.R. § 405.1877(a).

**B**

Appellants Borgess Medical Center ("Borgess") and Bronson Methodist Hospital ("Bronson," collectively "the Hospitals") are inpatient hospitals located in Kalamazoo, Michigan. In 1973, the Hospitals entered into an agreement to form a consortium to manage their health education programs and to train their interns and residents. In this

agreement, the Hospitals agreed to provide annual financing to carry out the consortium's purpose. The Hospitals then joined Michigan State University in the late 1980s to restructure this consortium into its current form as the Michigan State University Kalamazoo Center for Medical Studies ("KCMS").

KCMS administered graduate medical programs for various residency programs for the hospitals, including a psychiatry program, a pediatrics program, and an infectious-disease program. In order to ensure KCMS would receive the financial support necessary to operate, the Hospitals entered into various Affiliation Agreements with KCMS in which the Hospitals agreed to incur "joint and equal responsibility for providing [KCMS] with sufficient financing to carry out its programs as negotiated on a yearly basis." *See, e.g.*, JA 67. However, this was not the only source of funding for KCMS, as it also received millions of dollars of revenue from other sources, such as revenue from patient care, support from Michigan State University, and funds from contracts and grants. Thus, the arrangement required the Hospitals to equally divide a lump-sum payment to cover any of KCMS's expenses exceeding what was available from other sources.

The Hospitals sought reimbursement on their Medicare cost reports during fiscal years 2000–2004 for costs incurred for residents' training at KCMS's nonhospital clinics. The Hospitals' Medicare contractor initially determined Borgess's claims from the cost reporting periods ending in June 2001 and June 2002 along with Bronson's claims from 2000 and 2001 to be eligible for reimbursement, but, after reopening these initial determinations, it ultimately denied them in 2007. Additionally, the contractor denied the initial reimbursement claim from Borgess for the cost reporting period ending in

June 2003 and the initial reimbursement claims from Bronson for 2002, 2003, and 2004.

The Hospitals appealed these decisions to the PRRB, which concluded the contractors erroneously denied reimbursement for the Hospitals' claims. Subsequently, the CMS Administrator reviewed the PRRB's decision and reversed it on the grounds that the Hospitals failed to show they incurred all or substantially all of the costs of their residency programs and that they failed to comply with the Secretary's "written agreement" requirement. In response to the Administrator's decision, the Hospitals sought judicial review of the Administrator's denial of reimbursements before the United States District Court for the District of Columbia. Both parties cross-motioned for summary judgment, and the district court ultimately ruled in favor of the Secretary on both motions. The Hospitals now appeal.

## II

We review *de novo* the district court's grant of summary judgment. *Dist. Hosp. Partners, L.P. v. Burwell*, 786 F.3d 46, 54 (D.C. Cir. 2015). The Medicare Act authorizes judicial review under the Administrative Procedure Act ("APA"). *See* 42 U.S.C. § 1395oo(f)(1). This Court can only set aside the Secretary's action if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). When reviewing an agency's interpretation of its own regulation, we give substantial deference to the agency. *Thomas Jefferson Univ. v. Shalala*, 512 U.S. 504, 512 (1994). This is especially true when the regulation concerns "a complex and highly technical regulatory program" like Medicare. *Id.* Thus, this Court "must defer to the Secretary's interpretation [of a regulation] unless an alternative reading is compelled by the regulation's

plain language or by other indications of the Secretary's intent at the time of the regulation's promulgation." *Id.*

First, we address the Secretary's "written agreement" requirement. The Secretary's regulations require a written agreement between the hospital and nonhospital showing the hospital will incur the cost of the resident's salary and fringe benefits while working offsite along with reasonable compensation to the nonhospital for supervisory teaching activities. 42 C.F.R. § 413.86(f)(4)(ii) (2000).

The Hospitals argue the "written agreement" requirement is an improper basis for denying reimbursement because the contractor did not specifically identify it as a reason for reopening their cost report. To support this view, they rely on 42 C.F.R. § 405.1887(a), which requires the reviewing entity to "provide written notice to all parties to the determination or decision that is the subject of the reopening." Because the notice for reopening did not cite 42 C.F.R. § 413.86(f)(4)(ii) (2000), pertaining to the "written agreement" requirement, they claim they did not receive adequate notice.

We disagree. The reopening notices indicate the reimbursement claims were reopened to "remove the [residency] rotations which occur[ed] at [KCMS] in accordance with 42 CFR [§] 413.86(f)(4) as the hospital did not incur all or substantially all of the cost of training in that setting." *See* JA 179, 181, 183, 185. Thus, the provision cited for reopening the reimbursement claims was not limited to just 42 C.F.R. § 413.86(f)(4)(iii) (2000), which directly addresses the "all or substantially all" requirement, but also encompassed all subparts of 42 C.F.R. § 413.86(f)(4) (2000), including the "written agreement" requirement. Because the contractor cited to a provision encompassing both the "written agreement" requirement *and* the "all or substantially all"

requirement, the Hospitals were put on notice that either of these requirements could serve as a basis for denying reimbursement.

Turning now to the merits, the Hospitals argue the "written agreement" requirement is satisfied by a collection of documents executed over the years, including a 1973 Agreement between the Hospitals establishing a non-profit organization that served as KCMS's predecessor, the Hospitals' and KCMS's Affiliation Agreements, and KCMS's financial statements. The Hospitals argue these documents, taken together, show they were "contractually obligated to provide all financing necessary" for the managing and operating of resident training at KCMS. Appellants' Opening Br. 31. However, the record clearly shows that none of these documents meet the regulatory criteria for written agreements.

As noted by the district court, the 1973 Agreement is not an agreement between a hospital and a nonhospital, as required by 42 C.F.R. § 413.86(f)(4)(ii) (2000), but is rather an agreement between the Hospitals to create the predecessor to KCMS. *Borgess Med. Ctr. v. Sebelius*, 966 F. Supp. 2d 1, 7 (D.D.C. 2013). This alone is grounds to exclude this document from consideration, but it is not the only reason for doing so. The 1973 Agreement also fails to contain the level of specificity required to meet the "written agreement" requirement's standards. The regulation requires the agreement to indicate the hospital will incur the cost of the resident's salary and fringe benefits while working offsite along with reasonable compensation to the nonhospital for supervisory teaching activities. 42 C.F.R. § 413.86(f)(4)(ii) (2000). The only thing the 1973 Agreement says about financing is "[t]he parties shall provide [KCMS's predecessor] with financing to carry out its purpose as negotiated on a yearly basis." JA 65. This fails to specify

that either hospital will incur the cost of the resident's salary, fringe benefits, or other required expenses under the regulation for any of the residency programs. Thus, it is insufficient to serve as a written agreement under the governing regulation.

The Affiliation Agreements are similarly inadequate. While these annual agreements are between the Hospitals and KCMS—and are therefore between a hospital and nonhospital—they too lack specificity. The Affiliation Agreements simply state the Hospitals will share "joint and equal responsibility for providing [KCMS] with sufficient financing to carry out its programs as negotiated on a yearly basis." *See, e.g.*, JA 112. These Agreements obligate the Hospitals to provide lump-sum payments to finance KCMS's programs, but they fail to specify which programs the Hospitals are financing or how the funds will be used. Because KCMS receives millions of dollars of support from other sources, like revenue from patient care, support from Michigan State University, and revenue from contracts and grants, it is impossible to know which source is funding the residency programs. Our conclusion is buttressed by decisions of our sister circuits who, after examining comparable agreements, found them to be lacking. *See Covenant Med. Ctr., Inc. v. Sebelius*, 424 F. App'x 434, 438 (6th Cir. 2011) (holding written agreements requiring two hospitals to "mak[e] lump sum payments to cover [residency program costs] and other costs" did not satisfy the "written agreement" requirement); *Medcenter One Health Sys. v. Sebelius*, 635 F.3d 348, 350 (8th Cir. 2011) (holding a letter obligating two hospitals to cover the operating deficits of a nonhospital was not sufficient to meet the "written agreement" requirement). Thus, the district court correctly held these agreements "fail[ed] to sufficiently detail the compensation scheme for supervisory teaching activities and

the amounts the Hospitals will actually pay for these activities." *Borgess*, 966 F. Supp. 2d at 8.

As a last ditch effort, the Hospitals claim either their understanding of the Agreements or their conduct should show they complied with the underlying purpose of the "written agreement" requirement. However, the regulation provides no option for satisfying the "written agreement" requirement through conduct. *See* 42 C.F.R. § 413.86(f)(4)(ii) (2000).

Even if we did look to the Hospitals' conduct, the record does not clearly indicate they complied. The Hospitals rely upon KCMS's financial records from 2000–2004 to show they did pay for the expenses required under the Secretary's regulation. However, much like the Affiliation Agreements, these financial records lack the required specificity. While these records do show the total support given to KCMS from the Hospitals along with KCMS's total expenses for each year, they fail to provide any details regarding how the funds were allocated to the residency programs. Furthermore, the records make no mention of the Hospitals incurring the costs for their residents' salaries and fringe benefits while working at KCMS or of the compensation KCMS received for supervisory teaching activities.

The Hospitals' failure to comply with the "written agreement" requirement alone is sufficient grounds to affirm the district court. Therefore, we need not decide whether the Hospitals' cost-sharing arrangement complied with the "all or substantially all" requirement.

12

## III

For the foregoing reasons, the district court's grant of summary judgment is

*Affirmed*.